UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL BURRUEL, III,<br><br>Plaintiff,<br><br>v.<br><br>PAM AHLIN, et al.,<br><br>Defendants. | CASE NO. 1:18-cv-00103-LJO-MJS (PC)<br><br>**ORDER REQUIRING PLAINTIFF TO RESPOND OR NOTIFY COURT OF WILLINGNESS TO PROCEED ON CLAIMS FOUND COGNIZABLE**<br><br>(ECF No. 1)<br><br>[SVPA CASE]<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff is a civil detainee proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983.

Plaintiff's complaint (ECF No.1) is before the Court for screening.

**I.     Screening Requirement**

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must conduct an initial review of the complaint to determine if it states a cognizable claim. The Court must dismiss a complaint or portion thereof if it determines that the action has raised claims that are legally "frivolous or malicious," "fails to state a claim upon which relief may be granted," or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). "Notwithstanding any filing fee, or any portion thereof, that may have

been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.     Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiffs must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 677-78.

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). To state a claim under §1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

Under section 1983 the Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor,

Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**III.     Facts and Allegations**

    **A.     Plaintiff's Claims**

Plaintiff is currently detained at Coalinga State Hospital ("Coalinga") and complains of acts that occurred there. He names as Defendants (1) Pam Ahlin, Director of California Department of State Hospitals ("DSH"); (2) Brandon Price, Executive Director of Coalinga; and (3) Jack Carter, Chief, Department of Police Services at Coalinga.

Plaintiff's allegations can be fairly summarized as follows:

Plaintiff has been detained at Coalinga for nine years under California's Sexually Violent Predator Act ("SVPA").

On December 22, 2017, Defendant Ahlin submitted emergency changes to Cal. Code Regs. tit. 9, § 4350 (hereinafter Regulation 4350) that prohibited nearly all electronic devices with memory storage, devices capable of connecting to the internet or to other devices, and devices capable of copying or recording information. These changes were promulgated because individuals housed at Coalinga had been prosecuted for the possession and distribution of child pornography. This amendment became operational on January 12, 2018.

Plaintiff uses electronic devices to store music, movies, personal items, and legal materials. Plaintiff has scanned thousands of irreplaceable legal documents, family photographs, and other personal items. Plaintiff has invested thousand dollars on approved electronics and data storage devices.

Plaintiff has done nothing wrong and should not be punished for the actions for others. Plaintiff has not engaged in the use, copying, or distribution of child pornography.

3

Plaintiff has not violated any hospital policies or laws relating to ownership of his electronic devices.

Defendant Carter has a responsibility to uphold the Constitution and the Constitution prohibits him from engaging in unreasonable seizures. Seizing patients' devices is unreasonable.

Plaintiff brings claims under the Fifth, Fourth, and Fourteenth Amendments. He seeks declaratory and injunctive relief.

**B.      Notice of Emergency Amendments and Finding of Emergency**

The Court may on its own take judicial notice of information that is not subject to reasonable dispute. Fed. R. Evid. R 201 (b),(c); U.S. v. 14.02 Acres of Land More or Less in Fresno Cnty., 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and reports of administrative bodies."); see also Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). The Court therefore takes judicial notice of Notice of Emergency Amendments and Finding of Emergency provided by DSH.[1] This document outlines the facts and reasoning DSH relied upon in making its determination that there was a need for emergency amendment of Regulation 4350. As such, the document is relevant in determining whether Plaintiff's allegations state a claim. It is summarized here:

The Notice recites a need to control not just access to the internet and certain electronic devices, but data storage at state hospitals. Digital data storage and communication has allowed patients to access, exchange and/or profit from illegal material, including child pornography.

DSH has been working with the Fresno County District Attorney's office to investigate and prosecute child pornography cases. In 2017, DSH made eleven arrests in regards to child pornography. There have been five convictions of patients on charges

---

[1] The Department of State Hospitals' Notice of Emergency Amendments and Finding of Emergency for Emergency Regulations for Electronic Patient Property, dated December 22, 2017, located on the public web site of http://www.dsh.ca.gov/Publications/Regulations.aspx

relating to child pornography and several more are awaiting trial. DSH has found that nearly all of the child pornography is being distributed through various electronic devices.

Memory devices, even small devices, have the capability to store and copy digital information; and many electronic devices, even devices thought to be disconnected from the internet, allow for access to the internet.

DSH further notes that:

> [A]ccess to the internet provides full access to illegal materials, aerial views of DSH facilities, communication with victims, communication to create additional victims, and the ability to download illicit images for sale or sharing with other patients. However because the ability is in software format within currently authorized memory devices, it is not detectible as contraband through standard room searches. Penal Code section 1546.1, adopted in 2015, mandates that a search of electronic devices is not permitted without permission by the possessor or a search warrant further frustrating the ability to enforce facility and public safety. . . This internet access creates danger for the public, the staff, and patients, as well as interferes with treatment by creating exposures, triggers, and temptations that are intended to be controlled in a secured inpatient mental health setting.

Gaming devices that access the internet are currently prohibited and those without internet access are allowed. However, many recent gaming devices contain data storage capabilities, permitting patients to download illegal material to the device and then prevent the illegal material from being discovered in a standard room search. These gaming devices also allow for copyright violations. Therefore, the amendment would prohibit possession of gaming devices with accessible data and the ability to play non-proprietary inserts.

The ability to burn DVDs and CDs allows for the distribution of illegal images, as well as copyright infringements. This poses enforcement challenges as DSH does not have the staff needed to get warrants and to review disks to determine what material is appropriate. Therefore the amendment would ban all CD/DVD burners and blank disks, but allows some ownership of CDs and DVDs provided by a manufacturer.

DSH acknowledges that child pornography and other illegal materials exist within hospitals, but without the proposed amendment, it cannot address and remove them.

**IV. Analysis**

    **A. Capacity Issues**

Plaintiff brings these suits against Defendants in their official and individual capacities.

        **1. Official Capacity Claims**

Plaintiff properly seeks only injunctive and declaratory relief for claims against Defendants in their official capacities. See Aholelei v. Dept. of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007); Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010). A plaintiff pursuing claims against defendants in their official capacities must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985). That is, the plaintiff must establish an affirmative causal link between the policy at issue and the alleged constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 391-92 (1989); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996). Furthermore, "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013) (citing Hafer, 502 U.S. at 25.) "Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." Id. (citing Los Angeles County v. Humphries, 562 U.S. 29, 35-36 (2010)).

Here Plaintiff alleges that current and proposed DSH policies unconstitutionally prohibit him and other patients from owning certain electronic devices and accessing the internet and force him to dispose of his validly accumulated electronic material. He seeks

modification of these policies. Pam Ahlin, as the Director of DSH, Brandon Price, as the Director of Coalinga, and Jack Carter as the Chief of Police at Coalinga, appear to be appropriate defendants to respond to Plaintiff's requests. Therefore, if and to the extent Plaintiff's claims are found to be cognizable, Plaintiff may proceed with his suit against Defendants in their official capacities.

### 2. Individual Capacity Claims

Plaintiff also brings claims against Defendants in their individual capacities.

Under § 1983, the plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77 Simmons v. Navajo County, 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676-77. Supervisory personnel may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012).

Here, Plaintiff does not allege facts that any Defendant individually acted to deprive him of his rights. From Plaintiff's complaint it does not appear that Defendants individually participated in any violation of his rights. Thus, Plaintiff's claims against Defendants in their individual capacities are not cognizable as pled. Plaintiff will be given leave to amend.

### B. Substantive Due Process Issues

Plaintiff claims that the conditions of his confinement violate his Fourteenth Amendment right to substantive due process.

The Fourteenth Amendment substantive due process clause provides the standard for evaluating the constitutionally protected interests of individuals who have been involuntarily committed to a state facility. Youngberg v. Romeo, 457 U.S. 307, 322-

323 (1982); Jones v. Blanas, 393 F.3d 918, 931-32 (9th Cir.2004). Civilly committed persons have a substantive due process right to be free from restrictions that amount to punishment. United States v. Salerno, 481 U.S. 739, 746-47 (1987); Bell v. Wolfish, 441 U.S. 520, 535 (1979).

The Fourteenth Amendment requires the government to do more than provide the "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Rather, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972). "[T]he Fourteenth Amendment Due Process Clause requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released." Sharp v. Weston, 233 F.3d 1166, 1172 (9th Cir. 2000) (citing Ohlinger v. Watson, 652 F.2d 775, 778 (9th Cir. 1980)).

An SVPA detainee is entitled to more considerate treatment than criminally detained individuals, and when a SVPA detainee is confined in conditions identical to, similar to, or more restrictive than those applied to individuals detained under criminal codes, it is presumed that the detainee is being subjected to punishment. Jones, 393 F.3d at 932 (referencing Sharp, 233 F.3d at 1172-73). The SVPA "generally requires a careful balancing of the rights of individuals who are detained for treatment, not punishment, against the state's interests in institutional security and the safety of those housed at the facility." Hydrick v. Hunter, 500 F.3d 978, 990 (9th Cir. 2007), *vacated on other grounds by* Hunter v. Hydrick, 556 U.S. 1256 (2009).

Here, Plaintiff claims that the limitations on his possession of electronic devices and media storage are inherently punitive in nature. Plaintiff alleges that these restrictions are unnecessarily broad and amount to punishment because he is being denied access to information and devices which could facilitate his treatment.

Restrictions are permitted if they are "incident of some other legitimate government purpose." Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002). To be permissible a restriction need not be "an exact fit, nor does it require showing a least restrictive alternative." Id. at 1046 (citation omitted). Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility. Hallstrom v. City of Garden City, 991 F.2d 1473, 1484 (9th Cir. 1993). The Ninth Circuit has recognized that restrictions may be considered punitive (1) where the challenged restrictions are expressly intended to punish, or (2) where the challenged restrictions serve an alternative, non-punitive purpose but are nonetheless excessive in relation to the alternative purpose, or are employed to achieve objectives that could be accomplished in alternative and less harsh methods. Jones, 393 F.3d at 932 (citations and quotations omitted).

Here, there is nothing to suggest the regulations are intended to punish. The facts as alleged by Plaintiff and those subject to judicial notice indicate genuine and significant safety concerns at Coalinga relating particularly to the storage and sharing of child pornography. These are reasonably characterized as adversely impacting the security of the institution and the public and apparently conflict with treatment regimens. Not the least of such concerns is society's legitimate concern with re-victimization of children resulting from sharing and re-accessing child pornography. See United States v. Kearney, 672 F.3d 81, 94 (1st Cir. 2012) (noting the continuing harm that results from the distribution and possession of child pornography). Maintaining institutional security and providing for the safety of patients and the public are legitimate government interests. Wolfish, 441 U.S. at 566; Hallstrom, 991 F.2d at 1484. These regulations serve a legitimate government interest.

However, Plaintiff alleges that the regulations are overly broad and that safety concerns could be met with less restrictive measures. He complains that Regulation 4350 prohibits, and would allow for the confiscation of, items that do not pose a security

risk. Plaintiff also indicates that the regulations would compel him to destroy thousands of irreplaceable digital files, including photographs and legal files.

These claims will be addressed in turn below.

### 1) Prohibition on Electronic Devices and Storage

Examples include gaming devices or MP3 players which cannot connect to the internet and digital recorders that copy television shows.

It is not clear from the text of Regulation 4350 whether a gaming device, media player or digital recorder that cannot connect to the internet would be prohibited under the regulations. Regulation 4350 provides that "electronic devices with the capability to connect to a wired . . . and/or a wireless . . . communications network to send and/or receive information" are to be prohibited. Cal. Code Regs. tit. 9, § 4350(a). This includes, "Gaming devices with digital memory storage ability, the ability to access the internet, or the ability to play games or other media not specifically designed for the device," Cal. Code Regs. tit. 9, § 4350(a)(4)(E); and "[d]igital media recording devices, including but not limited to CD, DVD, Blu-Ray burners," Cal. Code Regs. tit. 9, § 4350(a)(2). Regulation 4350 further states, "Electronic items patients are permitted . . . . include: (1) One television or computer monitor (1) DVD, Blu-ray, or similar player; one (1) CD player; and one (1) radio or music player . . . . Tablets or other devices designed for confined individuals through authorized vendors." Cal. Code Regs. tit. 9, § 4350(b)(1,3).

The devices as described by Plaintiff cannot connect to the internet or store electronic data from other sources. Therefore, a plain reading of the regulatory text suggests they would not be banned under Regulation 4350's prohibition against electronic devices that can send or receive information. See Cal. Code Regs. tit. 9, § 4350 (a). However, these particular devices are not included on the list of items that are explicitly allowed. See Cal. Code Regs. tit. 9, § 4350 (b).

Because Plaintiff is proceeding pro se, his complaint is to be construed liberally. Hebbe, 627 F.3d at 342. Construing the facts in favor of Plaintiff, allegations that these

10

devices would be banned is sufficient to state a claim. Prohibiting devices that are unable to connect to the internet and unable to store electronic data may be beyond the scope of the legitimate government interest and thus "excessive in relation to the alternative purpose." Jones, 393 F.3d at 932. Therein lies a cognizable claim.

### 2) Scanned Digital Documents

Plaintiff alleges that Regulation 4350 will require him to destroy thousands of digital files that are irreplaceable, including confidential legal material and personal photos.

Regulation 4350 provides that:

> patients who are currently in personal possession of . . . any of the contraband items . . . may grant permission to the Department for the item to be reviewed for illegal material . . . . If consent is granted by the patient and there is no illegal material found on the contraband items set forth in subsection (a), the item shall be mailed to a location designated by the patient. If consent is not granted by the patient to search the contraband items set forth in subsection (a), the hospital shall destroy the contraband item.

Cal. Code Regs. tit. 9, § 4350(e).

Regulation 4350 does give individual hospitals the discretion to permit onsite storage of legal and therapeutic material in digital format and to allow inmates supervised access to such material. Cal. Code Regs. tit. 9, § 4350(d). However, there is no indication that Coalinga has or will exercise that discretion in that way. If it does not, Plaintiff must ship all his stored digital data to a third party or have it destroyed.

In the Notice of Emergency Amendments, DSH justifies the regulation and its procedure by noting: It lacks the manpower to review each copied disk for contraband on an ongoing basis. Even if an item were initially searched and found lacking in contraband, there is nothing to prevent a patient from later copying illicit material on to it. DSH would not be able to search the disk without probable cause. DSH does not have the resources to enable it to seek and secure search warrants with sufficient regularity to prevent the abuse it has experienced to date. In short, any onsite unsupervised storage of digital documents would allow for the potential presence of digital contraband not

11

capable of being found in a standard room search. The restriction is reasonably related to the legitimate government interest of preventing patients from storing illicit digital material and preventing the very abuses which have recently been uncovered.

The Court has grave concerns about the potentially devastating effect of forcing an detainee to put all of his legal materials in the hands of a third party or see them destroyed.[2] The regulatory procedure essentially presumes each detainee has a reliable, technologically adept, third party willing to assume the time, trouble, potential expense, and responsibility of faithfully maintaining, retrieving and providing to the detainee hard copies of items in the detainee's legal files on request. In practice, however, the availability of such a person is unlikely, if not nonexistent. Forfeiture of all of one's legal documents would be a very high price to pay for the inability to find such a person. But even if a proper custodian where located, the Court can anticipate that the difficulties and pitfalls of such a retrieval system would doom it to failure. At best each detainee would have to recall what he had stored and where it was stored and specifically request it and then await its retrieval and delivery via hard copy to him. Absent such specificity in memory and request, the third party would have to conduct a search by topic or procedural issue, a challenging and questionably successful undertaking for a person without legal training. Such procedures and the associated pitfalls pose a very real risk of significantly impeding one's access to the Courts, perhaps even frustrating it completely. Of course, the alternative of destroying ones complete legal files (accumulated electronically at the direction of DSH) could, and likely would, do irreparable damage to ones pursuit of legal relief.

---

[2] By "legal materials," "legal files," and "legal documents," the Court assumes that Plaintiff refers to all pleadings and other papers relating to his detention or prior incarceration, challenges to it, and other constitutional challenges to his plight. Cf. Lewis v. Casey, 518 U.S. 343, 354 (1996) (limiting the availability of access to courts claims to direct criminal appeals, habeas petitions, and civil rights actions). The Court's above-expressed concern about depriving a detainee of such materials does not extend to personal photographs. While perhaps third party maintenance or even destruction of photos is unfortunate, it does not create the threat to detainees' valuable Constitutional rights.

12

The substantive due process analysis requires the Court to determine whether the regulation is "excessive in relation to its non-punitive purpose or is employed to achieve objectives that could be accomplished in so many alternative and less harsh methods[.]" Jones, 393 F.3d at 934 (citations and internal alterations omitted). In this regard, the Court is particularly mindful of the significant interests at stake in limiting, or eliminating, Plaintiff's access to legal materials. The allegations are presently insufficient to state an access to courts claim because Plaintiff has yet to suffer an actual injury. See Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L. Ed. 2d 606 (1996) (finding that an access to courts claim requires an actual injury). But the denial alleged here is so overarching, and so possibly complete, that a plaintiff may be foreclosed from meeting that burden because he may be divested of documents needed to show his loss. At the pleading stage, the Court concludes that these factors are sufficient to make Regulation 4350 excessive in relation to its non-punitive purpose. At present, the Court is unconvinced that DSH's legitimate objectives could not be accomplished with less harsh methods and results.

Accordingly, the Court finds that Plaintiff has raised sufficient questions to allow the claim to go forward and to require Defendants to respond.

**C.     Procedural Due Process**

Plaintiff may also be intending to claim that his Fourteenth Amendment procedural due process rights are violated by the regulations.

Procedural due process under the Fourteenth Amendment protects individuals from the deprivation of property without due process of law. U.S. Const. amend. XIV, § 1. The Ninth Circuit has not addressed the precise standard to be applied to procedural due process claims brought by civil detainees, however they have found that "individuals detained under the SVPA must, at a minimum, be afforded the rights afforded prisoners confined in a penal institution." Hydrick 500 F.3d 978, 998 (9th Cir. 2007). District Courts have applied the same standards for prisoners to civil detainees. See e.g., Koch v. King,

No. 1:15-cv-00438 SKO (PC), 2017 U.S. Dist. LEXIS 5027 (E.D. Cal. Jan. 11, 2017); Cerniglia v. Price, No. 117CV00753AWIJLTPC, 2017 WL 4865452 (E.D. Cal. Oct. 27, 2017); Allen v. King, No. 1:06-cv-01801-BLW-LMB, 2016 U.S. Dist. LEXIS 108748 (E.D. Cal. Aug. 16, 2016); Smith v. Ahlin, No. 1:16-cv-00138-SKO (PC), 2016 U.S. Dist. LEXIS 141587 (E.D. Cal. Oct. 12, 2016); Johnson v. Knapp, No. CV 02-9262-DSF (PJW), 2008 U.S. Dist. LEXIS 125001, at *14 (C.D. Cal. Dec. 17, 2008); Johnson v. Witter, No. 3:13-cv-00689-MMD-VPC, 2015 U.S. Dist. LEXIS 41941, at *8-9 (D. Nev. Mar. 31, 2015).

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), and prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property is actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Logan, 455 U.S. at 436; Piatt v. MacDougall, 773 F.2d 1032, 1036 (9th Cir. 1985) see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir.1987). Authorized deprivations of property are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89 (1987).

To have a property interest, Plaintiff must demonstrate "more than an abstract need or desire for it. ... He must, instead, have a legitimate claim of entitlement to it" under state or federal law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

The question presented is whether a civil detainee has a property right to items in his possession that were once, but no longer, authorized, where Plaintiff is allowed to transfer those items to a third party of his choosing outside the institution. The Ninth Circuit has not yet reached this issue. However other courts have found that "while an

inmate's ownership of property is a protected property interest that may not be infringed upon without due process, there is a difference between the right to own property and the right to possess property while in prison." <u>Searcy v. Simmons</u>, 299 F.3d 1220, 1229 (10th Cir. 2002) (quoting <u>Hatten v. White</u>, 275 F.3d 1208, 1210 (10th Cir. 2002)). Thus, courts have found that when property policies are revised to prohibit items but inmates and detainees are allowed to store the items outside of the institution, no property interest is implicated and no process is due. <u>See e.g.</u>, <u>Graham v. Sharp</u>, Civil Action No. 10-5563 (SRC), 2011 U.S. Dist. LEXIS 66675, at *45 (finding no constitutionally-recognized property interest for civil detainees in the continued ownership of previously authorized electronic devices in the face of newly implemented regulations that would prohibit and confiscate these devices); <u>Davis v. Powers</u>, No. C08-5751 FDB/KLS, 2010 U.S. Dist. LEXIS 52067, at *27 (W.D. Wash. Apr. 16, 2010) (finding no property interest when a television had to be mailed home because it was in conflict with regulations); <u>Trenton v. Schriro</u>, No. CIV 06-2905-PHX-MHM (DKD), 2007 U.S. Dist. LEXIS 65376, at *4-5 (D. Ariz. Aug. 31, 2007) (no property right for previously allowed typewriter where plaintiff had the option to mail it home rather than have it confiscated); <u>Dunbar v. A.D.O.C.</u>, No. CV 08-420-PHX-SMM (MEA), 2008 U.S. Dist. LEXIS 40848, at *11 (D. Ariz. May 12, 2008) (finding no property right deprivation for confiscation of a television pursuant to prison regulations); <u>see also</u> <u>Knight v. Yarborough,</u> No. CV 03-01210-AG (VBK), 2011 U.S. Dist. LEXIS 113710, at *54 (C.D. Cal. Aug. 22, 2011) (noting that "[i]nmates do not have a constitutional right to keep, or to dispose of contraband materials as they wish.").

Here, although Plaintiff would be denied the immediate possession of noncompliant property onsite, he can mail it, if free of illicit material, to a location of his choice. <u>See</u> Cal. Code Regs. tit. 9, § 4350(e). Since Plaintiff would retain ownership of the items, no deprivation would have occurred, no protected property right would have been implicated, and so no process would be due. <u>See</u> <u>Valdez v. Rosenbaum</u>, 302 F.3d

1039, 1045 (9th Cir.2002) ("Valdez did not have a state-created liberty interest in using a telephone during his pretrial confinement. Accordingly, his procedural due process claims fail.").

Finally, even if Plaintiff had a due process interest in the property at issue in Regulation 4350, the process afforded appears to have been adequate. "'Ordinarily, due process of law requires [notice and] an opportunity for some kind of hearing prior to the deprivation of a . . . property interest.'" Halverson v. Skagit County, 42 F.3d 1257, 1260 (9th Cir. 1995) (internal quotations and citations omitted). "However, when the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." Id. "[G]overnmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional due process requirements of individual notice and hearing; general notice as provided is sufficient." Id. at 1260-61. This appears to have been met here.

This claim is not cognizable as drafted. Plaintiff will be given leave to amend.

**D.     Equal Protection**

Plaintiff seeks bring claims that Regulation 4350 violates the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently. Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601-02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562,

564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff's allegations fail to allege a claim that Defendants treated him, either as a member of an identifiable class or as an individual, differently than they treated other similarly situated individuals. Plaintiff does not explain how Defendant's actions implicate the Equal Protection Clause, and there is no obvious equal protection claim arising from the prohibition of electronics at state hospitals. Plaintiff fails to state an equal protection claim. He will be given leave to amend.

### E. Fifth Amendment

To the extent Plaintiff intended to bring a Fifth Amendment claim, "the Fifth Amendment's due process clause applies only to the federal government." Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008).

Plaintiff is a state civil detainee and Defendants are state officials. His due process claims are properly analyzed under the Fourteenth Amendment above. They are not cognizable and are not capable of cure through amendment.

### F. Fourth Amendment

Plaintiff seeks to bring claims under the Fourth Amendment against Defendants for violating his Fourth Amendment right to privacy.

The Fourth Amendment protects against unreasonable searches and seizures. Prisoners "do not forfeit all constitutional perfections" due to incarceration. Wolfish, 441 U.S. at 545. However, the "right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." Hudson, 468 U.S. at 527-28.

Civil detainees have, at best, "a diminished expectation of privacy after commitment to a custodial facility." Bell, 441 U.S. at 557. The Ninth Circuit has found that a limited Fourth Amendment right to be free of unreasonable search and seizure

extends to civil detainees. Hydrick, 500 F.3d at 993. A search will violate a civilly detained individual's Fourth Amendment rights if it is "arbitrary, retaliatory, or clearly exceeds the legitimate purpose of detention." Meyers v. Pope, 303 F. App'x 513, 516 (9th Cir. 2008); Hydrick, 500 F.3d at 993. In the civil detention context, "the reasonableness of a particular search [or seizure] is determined by reference to the [detention] context.'" Hydrick, 500 F.3d at 993 (quoting Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988)). In the context of secure civil institutions, such as at issue here, there are other concerns that mirror those that arise in the prison context, e.g., "the safety and security of guards and others in the facility, order within the facility and the efficiency of the facility's operations." Id. (quotations omitted).

Plaintiff fails to allege a cognizable claim. The facts as alleged indicate that DSH regulations for searching electronic devices and storage are reasonably related to a legitimate interest. Regulation 4350 would allow for Plaintiff to consent to a search and non-contraband material would be sent to a location of Plaintiff's designation. Cal. Code Regs. tit. 9, § 4350(e). These searches allow for DSH to find and remove illicit digital material and secure the facility. There is nothing to suggest the action is arbitrary or retaliatory. Therefore, this does not constitute an unreasonable search. This claim is not cognizable. Plaintiff will be given leave to amend.

**VI. Conclusion and Order**

Plaintiff's complaint states a cognizable substantive due process claim against Defendants Ahlin, Price, and Carter in their official capacities.

The remaining claims are not cognizable as pled. The Court will grant Plaintiff the opportunity to file an amended complaint to cure noted defects, to the extent he believes in good faith he can do so. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Alternatively, Plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment).

If Plaintiff does not wish to file an amended complaint, and he is agreeable to proceeding only on the claims found to be cognizable, he may file a notice informing the Court that he does not intend to amend, and he is willing to proceed only on his cognizable claims. The undersigned will then recommend that his remaining claims be dismissed, and the Court will provide Plaintiff with the requisite forms to complete and return so that service of process may be initiated on Defendants Ahlin, Price, and Carter.

If Plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 676-677. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the prior complaint, see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a blank civil rights complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff must:

a. File an amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file an amended complaint and he is willing to proceed only on the claim found to be cognizable in this order; or
   c. Notify the Court in writing that he wishes to stand on his complaint as written; and
2. If Plaintiff fails to comply with this order, the undersigned will recommend the action be dismissed for failure to obey a court order and failure to prosecute.

IT IS SO ORDERED.

Dated: March 7, 2018        /s/ *Michael J. Seng*
                            UNITED STATES MAGISTRATE JUDGE